All right, good morning everyone. We have one case that's on the oral argument calendar for today. The remainder of the cases on the docket have been submitted and we want to thank Judge Ben Savango for sitting with us today and we only regret that she isn't here in person. It's kind of odd to have two judges and four law clerks and nobody else except for the courtroom deputy in here but that's okay. We'll proceed. All right, we'll take up Salazar versus Garland. Ms. Schoenberg? Yes, Your Honor. Good morning. May it please the Court. Laurie Schoenberg on behalf of the petitioner's appellants. I'd like to reserve two minutes for rebuttal. Santos-Zacariah versus Garland holds that a statutory exhaustion requirement at 8 U.S.C. section 1252 D1 is a non-jurisdictional claim processing rule subject to waiver and forfeiture and equitable exceptions. Santos-Zacariah did not, however, alter the legal standard that this court has employed to assess whether a non-citizen exhausted claims for judicial review. Before and after Santos-Zacariah, exhaustion requires a non-citizen to raise a non-constitutional legal claim and administrative proceedings in a manner sufficient to put the BIA on notice of what is being challenged. Exhaustion does not require precise legal terminology, a well-developed argument, or an argument raised in a precise form. Here the petitioners based their asylum claims in part upon their past persecution in El Salvador. Their asylum applications, the record evidence, and the testimony raised claims for asylum grounded in part on their political opinion and their family membership beyond the particular social groups explicitly referenced in the record, and yet the lower tribunals disregarded those aspects of the petitioner's case. As to the past persecution finding, the board found that the petitioners waived their appeal of the immigration judge's past persecution finding, even though the petitioners argued below that the threats they faced in El Salvador amounted to past persecution, and even though they the immigration judge's finding that they failed to establish their statutory eligibility for asylum, the asylum laws statute and this court's cases make clear that those statutory eligibility criteria include past persecution as a means of proving. So counsel, so with respect to the family membership, I do agree that that was raised in the brief before the IJ. There's at least two or three lines about it in the brief to the IJ. Where are you citing the political opinion when I don't think that's there at all? Well, first of all, with respect to the Board of Immigration Appeals finding that the petitioners waived their challenges to the immigration judge's failure to consider their asylum case based on political opinion, that finding of waiver occurred for the first time in the Board of Immigration Appeals decision. So the but as it relates to the record, Your Honor, the asylum applications themselves raised claims for asylum on account of political opinion. It was explicitly marked in the asylum application. Is that sufficient for the agency, for exhaustion of the agency, if you mark it on the asylum application? I've just never seen that. Is there an opinion that says that? I'm not limiting it to that, Your Honor. I don't believe that there is a case that specifically addresses that issue. But, you know, in addition to the marked ground for asylum, the applications and the record evidence in the testimony made clear that Mr. Salazar's prior employment with a government agency was central to their claims and to their subjective fears that their lives would be at risk in El Salvador. Do you exhaust the particular social group of family member of Philander Salazar Vasquez? Yes, Your Honor. In counsel's arguments before the court, both in a brief before the immigration court and in his oral argument before the court closing argument. Before the BIA? Yes, Your Honor. In the notice of appeal, we argued that the immigration judge erred by failing to consider whether the their past or fear of persecution in El Salvador and both their political opinion and their family membership. And did the BIA explicitly reject that or did it just not reach that question? It just did not reach that question. The Board of Immigration Appeals determined that the petitioner's appellants failed to raise their eligibility for asylum on account of political opinion and family membership with sufficient particularity. Accordingly, the Board of Immigration Appeals determined that they waived those claims for relief. As I've argued in the brief and, you know, as this court's cases indicate, the determination that they waived those claims for relief was legal error because waiver requires an intentional relinquishment or abandonment of an argument. And there is no evidence in the record that the petitioner's appellants specifically intentionally relinquished or abandoned those claims for relief. In fact, the I'd like to go back to the question of the political opinion. I know it was checked as a grounds. Sure. What was the point? I mean, I didn't see and perhaps you could direct me to it what political opinion they were expressing. It seems that most of this was grounded in the fact that he worked for the government. That's not a political opinion. That was his job. But what political opinion did he and his wife actually express that was publicly known that would have been grounds for them to be targeted other than where he worked? Well, Your Honor, there weren't any explicit statements of political opinion on the record, but this court's opinions do not require that. Well, at some point, doesn't he have to say something beside, I checked a box and offer some evidence to the IJ as to what opinions they thought they were being targeted for? Is it enough, as Judge Blumenthal said, just to check a box and say that puts it at issue? It's not just checking a box, Your Honor. I mean, the record makes clear that his prior employment at a government agency was central to their claims and that he believed that he was targeted just on account of that membership in a government agency. So is membership in an agency a political opinion? One's prior affiliation with people known to express a political opinion can constitute, it can form the basis for an asylum claim based on imputed political opinion, even if it's not political. What is that opinion? It just seems kind of like bootstrapping here, that I work for an agency, so the agency may have opinions, but we don't know what those opinions are, and they're being imputed to me, and where in the record did he, you know, identify what was it that was related to his employment that put him at risk, other than the fact that he worked for that company, for the agency? Well, the political opinion at issue would be his perceived affiliation with government policies, but in terms of the record, the petitioner Philander Salazar-Vasquez did testify that basically that he had developed specialized skills in his position of employment, in terms of developing knowledge of the geography and infrastructure of what could be rival gang territory in El Salvador, and because of that specialized knowledge that placed his life at risk. He did cite other threats to the lives and safety of his co-workers, including the murder of a co-worker shortly before he himself faced threats to his life and safety. You know, and as this court's cases demonstrate, he doesn't need to express an actual political opinion to have a claim for asylum based on an imputed political opinion, and it's not just, it's not just checking a box here. You know, he talked about his position of employment and how his position of employment and his family's affiliation with him placed his life at risk. This court's cases have recognized that prior to your rebuttal time, so you might want to. Yes, Your Honor. Thank you. Ms. Morrisey. Thank you. Good morning, Your Honors. May it please the court, Kristen Morrisey, on behalf of respondents in this case. Your Honors, I did want to make a note of the argument today that, as Your Honor had pointed out to the extent in respondent's brief, there was a statement made that there was, to suggest there was no mention of family whatsoever in petitioner's brief before the immigration judge. I did want to acknowledge that there are a couple of places at the end of that brief where there is a passing reference to family, to the petitioner's family. But it's also pretty clear from the notice of appeal and the appendix to the notice of appeal to the BIA what they're talking about with respect to the family members of Philander. That they were, I mean, there is evidence that they were being persecuted because they were related to Philander. And that's distinct from political opinion or working for a government job or some of these other, I mean, I'm very focused in on this family membership because the evidence, you know, that the son was targeted, the wife testified regarding her fear because her family member worked for the government. Family members were diagnosed with PTSD. Police officers came to their home from work. And I'm just, I just don't, the BIA did not take that particular social group really seriously. And now, Bablin, I tend to agree with you on the others that there's a lack of social distinction. But this clearly, and it comes within our case law on PSGs. Yes, Your Honor, and before the board, petitioners did raise this family-based claim. But the government's position is that the passing references in the brief to immigration judge, when then afterwards, testimony and evidence didn't flesh out during the hearing, that this was a basis upon which they sought relief. And at the close of the hearing, when petitioners' counsel, and they were represented by counsel before the immigration judge, was specifically asked to delineate, you know, the grounds on which they sought relief, specifically laid out, you know, petitioner was persecuted for two reasons, and laid out the two specific particular social group claims that they were making. And on that- But counsel, don't we do that all the time? Like, your briefs, your written briefs laid out much more, many more arguments. But then when you go to oral argument, you focus on the ones that, you know, you really care about. So that's not a basis of waiver to me. Certainly, Your Honor. But even in the brief where the petitioner was describing the basis upon which he was seeking relief and laid it out, again, it was a reference to these two specific particular social group claims to the exclusion of other additional groups or particular social groups, such as a family-based claim. And it would be our contention that on that record, and based on the evidence and the testimony that was fleshed out, and the arguments of his attorney, and the fact that these weren't pro se petitioners, they were represented and had the ultimate verdict. What's wrong with the brief, though? It says, Kevin, Evans, and Maria are also at risk for their mere relationship as immediate family members of Mr. Salazar. The eldest son has already been personally identified and confronted. Mrs. Salazar's wives received phone calls. What more do you need from that? Your Honor, we would still contend that that's not enough in these circumstances. The incident referring to Petitioner's son, again, the details on that were vague and not clear that it had anything to do... I agree, but why didn't the BIA just rule that way? Right, exactly. That was exactly what I was going to say. The BIA didn't consider it on the merits. What's the harm in sending it back to the BIA to consider the PSG of being a family member of Philander on the merits? Well, certainly, Your Honor, if the court concludes that the board erred by not considering this issue, that would be the remedy to send the case back to the board to consider the specific family, particular social group claim. That on the record, the issue wasn't raised or delineated clearly enough to put the immigration judge on notice so that the board didn't err by applying the procedural default rule in this case. But yes, Your Honor is correct. That would be the remedy in this case. I have a question about the logistics of that. If we were to conclude that the father, Salazar Vasquez, did not have a claim for asylum because he did not identify a social group or a political opinion and whatever, his family has identified themselves as a particular social group because the identity is they are related to somebody who was threatened, do they get an asylum claim based on being threatened by somebody because they're the children or spouse of someone who isn't getting an asylum claim? I mean, that seems kind of like an interesting extrapolation. If he can't qualify and there's this derivative because they're related to him, then simply because they were threatened because they're related to him, is that enough? Your Honor, in that case, that would be a separate asylum application because they were included as riders necessarily under the lead petitioner's claim for relief. Okay. So in other words, you're not making a harmless error of ground, right? You're not saying that if the BIA failed to consider a family group, you're not saying that was harmless error. I don't believe that the evidence in this case fleshed out that that was a basis or that there was a nexus between that particular social group and the harm that petitioner experienced or feared. But since the board didn't rule on the family-based claim, the proper avenue would be to send it back to the board for the board to make that consideration in the first instance and to then, if it chose to, determine whether or not there was a nexus between that group and the petitioner's claims. And Your Honor, also to touch briefly on what was discussed a few minutes ago, certainly with regard to the political claim, we would argue that, yes, checking the box off on the asylum application clearly was not enough, given the testimony, again, and the evidence that was presented before the immigration judge to present that claim with enough sufficiency to put the immigration judge on notice. There was nothing in the evidence and the testimony and closing arguments to give some evidence of an actual or an imputed political opinion to petitioner. And being a ground upon which petitioners were seeking relief. And Your Honor, also to point out, and we submitted a 28-J letter in the wake of the Santos-Zachariah decision, that while exhaustion is not a jurisdictional requirement anymore, that case did not determine the issue conclusively as to whether it was something that was subject to equitable waiver. The government's position is that it's a mandatory claims processing rule after Santos-Zachariah, and that the plain text clearly indicates that it would be mandatory, that the court may review a final order of removal only if the non-citizen exhausts all administrative remedies. And in this case, the government has not waived the exhaustion issue. It was raised in our answering brief. We've clearly preserved the issue, and we would ask the court to enforce it as a mandatory exhaustion requirement. If you have, does anyone have any further questions? There's no requirement you use all your time if you're done. Yes, Your Honors. If there are no further questions at this time, the government would again ask that the court find that substantial evidence supports the agency's denial of petitioner's asylum and withholding of removal applications. All right. Thank you, counsel. Ms. Schoenberg? Yes, Your Honor. As Your Honor pointed out, just with respect to the family-based asylum claim, the petitioners did argue through counsel that they suffered past persecution and continue to be at risk for their mere relationship with as immediate family members of Mr. Salazar. Is Mr. Salazar in that social group, in that PSG, or would he then, I mean, it's conceivable that his family could be granted asylum, and he would not, but then there would be other routes for him to gain entry into this country, right? Conceivably, Your Honor. I mean, it's the way that at least it was framed below, was that the remaining petitioners had raised claims for asylum on account of their immediate family membership with Mr. Salazar-Vasquez, and the petitioner, the petitioner's wife, the lead petitioner, Maria Luz Salazar-Munguia, had expressed concerns that people would harm her and her family in El Salvador because of Mr. Salazar-Vasquez's prior government employment in their relationship with him. If this Court were to remand Tanner? To develop that argument a little further, is it because he had specialized knowledge that he refused to share with the gangs that they went after his family to get, you know, maybe put extra pressure on him to share that Mr. Salazar-Vasquez did testify that the specialized knowledge that he developed through his course of employment, particularly a knowledge about the geography and infrastructure of rival neighborhoods in El Salvador, was something that placed him at harm and his family at harm because of their relationship with him, potentially to get at him. So, you know, those, just to answer your earlier question, it is possible that the family could be granted asylum and that Mr. Salazar-Vasquez might have another route to legalizing his immigration status, specifically if his wife and children were granted asylum status and his wife became a permanent resident under Section 209B of the Immigration and Nationality Act, she could potentially petition for him to become a permanent resident. It is a long road because the petitioner, if I remember correctly, did not enter the United States with inspection and admission, so if his wife is a permanent resident petitioned for him, he would have to return to his home country to apply for an immigrant visa in San Salvador, and that's not something that the petitioner's appellants want to do because they fear going back to their home country. But, you know, with respect to his underlying claim, you know, we've talked a lot about the that, you know, the evidence on record of his prior government employment, the indication that they intended to assert a political opinion-based asylum claim, and also case law of this court, which establishes that one's affiliation with a government officer or a government agency can give rise to an imputed political opinion claim was enough to exhaust that claim for review. But even if we focus on the particular social groups that former counsel raised, he raised, you know, particular social groups based on basically Mr. Salazar-Vazquez being a public sector employee, married, being from El Salvador. Right. Counsel, you're well over time, so maybe you could just wrap it up. Well, all I wanted to really say about that is that the lower tribunals did not conduct a analysis of whether those proposed social groups had the requisite immutability, social distinction, and particularity to constitute a particular social group. The lower tribunal citations to matter of Acosta to determine whether the former employment of Mr. Salazar-Vazquez had the requisite immutability is insufficient under this court's cases, in particular Saucedo v. Garland, because it doesn't address... I, yes, I'm turning to the particular social group claim. I'm sorry. My apology is your honor. So anyway, even if this court determines that the petitioner's appellants failed to exhaust their claim for asylum based on political opinion, the social group analysis that the lower tribunals conducted in this case is woefully insufficient. You know, with respect to immutability, they just cited to matter of Acosta. When, you know, this court's case has made clear that just citing to that case is not sufficient for the court to conduct, the lower tribunals to conduct a case-by-case analysis of whether the proposed group has sufficient immutability. Well, thank you, counsel. So, Vazquez v. Garland, along with every other case on the docket, is submitted as of today, and this session of the court will be adjourned for today. All rise. This court for this session stands adjourned.
judges: WARDLAW, BUMATAY, Bencivengo